RONALD SENYAK and DIANE R. SENYAK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Senyak v. Commissioner
Docket No. 29855-911
United States Tax Court
T.C. Memo 1993-489; 1993 Tax Ct. Memo LEXIS 505; 66 T.C.M. (CCH) 1109; October 26, 1993, Filed *505 Decision will be entered for respondent. For petitioners: Gino Pulito. For respondent: Dawn Marie Krause. PARKER
PARKER
MEMORANDUM OPINION PARKER, Judge: Respondent determined additions to petitioners' Federal income tax for the taxable year 1984 under section 6653(a)(1)(A) in the amount of $ 237, under section 6653(a)(1)(B) [1] in the amount of 50 percent of the interest due on $ 4,730, computed from April 15, 1985, to the earlier of the date of assessment or the date of payment, and under section 6661 in the amount of $ 2,863. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues in *506 this case arise out of petitioners' investment in a tax shelter program known as Stable Gate Limited 675-B, an Ohio Limited Partnership (Stable Gate). The issues for decision are: (1) Whether petitioners are liable for the additions to tax under section 6653(a)(1) and (2) for negligence or intentional disregard of rules or regulations; (2) Whether petitioners are liable for the addition to tax under section 6661(a) for a substantial understatement of income tax; and (3) Whether respondent abused her discretion by failing to waive the section 6661(a) addition to tax. For convenience and clarity, the findings of fact and discussion of the applicable law are combined. Some of the facts have been stipulated and are so found. The stipulations of facts and the exhibits attached thereto are incorporated herein by this reference. Hereinafter, petitioners Ronald Senyak and Diane R. Senyak collectively are referred to as petitioners and individually as Mr. or Mrs. Senyak. Petitioners resided in Oberlin, Ohio, at the time they filed the petition in this case. Petitioners are high school graduates. Mr. Senyak also attended schools in the United States Air Force for airborne radio operators *507 and in the Federal Aviation Administration (FAA) for air traffic controllers. In 1991 or 1992, Mrs. Senyak became a licensed practical nurse, but in 1984 she was working as a waitress or unemployed. Petitioners have never taken any business or tax courses. Prior to 1984, Mrs. Senyak's father or a friend prepared her tax returns or assisted her in the preparation of her returns. Mr. Senyak always has had his tax returns prepared by professionals. In 1984, petitioners purchased interests in three tax shelters from Graham & Associates, which promoted itself as a financial planning firm. Mr. Senyak had heard about Graham & Associates from his FAA coworkers. Prior to that time, petitioners had little experience in making investments. Prior to purchasing interests in the tax shelters, Mrs. Senyak checked with the Better Business Bureau and was informed that no complaints had been filed against Graham & Associates. [2]
*508 Initially, petitioners discussed the benefits of the Graham & Associates "program" with Thomas Graham, the president of Graham & Associates, and John Graham. During that meeting, petitioners received literature that described the various tax shelters, which they then reviewed at home. The literature included an offering memorandum for Stable Gate. After reviewing the offering memorandum, petitioners met with Joe Trible, an employee of Graham & Associates, to further discuss the offering memorandum. As a result, petitioners purchased interests in Stable Gate and two other tax shelters promoted by Graham & Associates, Children's Classics Audio Cassettes (Children's Classics) and Weymouth Ice Cream (Weymouth). Children's Classics is a tax shelter involving the purchase and leasing of a master recording, and Weymouth is a tax shelter involving the purchase and leasing of ice cream machines. Prior to purchasing the tax shelters, petitioners did not have an independent review by a Certified Public Accountant (C.P.A.) or any other professional or verify the profit potential of the tax shelters. Because of the loss deductions Mr. Senyak anticipated from the tax shelters, he reduced *509 the amount of his income tax withholding. Representatives of Graham & Associates, however, warned petitioners that their first return would most likely be audited because of the drastic change in the tax return. Petitioners paid $ 9,725 in five installments for one unit in Stable Gate, the minimum investment permitted in the limited partnership. Upon subscription to the tax shelter, petitioners made the initial payment in the amount of $ 3,725 in 1984. Four subsequent payments, each in the amount of $ 1,500, were due and were paid in June of 1985, 1986, 1987, and 1988. As part of the services offered by Graham & Associates, an associate of the firm prepared petitioners' tax returns for the tax years 1984 through 1988. On their 1984 Federal income tax return, petitioners deducted $ 13,227 as an ordinary loss from Stable Gate. This was not identified on the return as a loss from Stable Gate but was part of a total net loss of $ 40,572 claimed on a Schedule C for Diron Investments Co. (losses of $ 21,687 plus claimed expenses of $ 18,885). Respondent disallowed deductions for all expenses and depreciation claimed on Stable Gate's partnership return for the tax year ending December *510 31, 1984, in the total amount of $ 440,902. The partnership return indicated that a large portion of the claimed loss resulted from deductions related to the purchase of Children's Classics cassette rights acquired by the partnership on December 1, 1984. Respondent determined that the deductions for the expenses and depreciation were not allowable because the activity of leasing children's cassette master recordings was not engaged in for profit, did not constitute a trade or business, did not involve property held for the production of income, and lacked economic substance. Petitioners have agreed to and paid the deficiency resulting from the disallowance of the deduction for their distributive share of Stable Gate expenses and depreciation related to the children's cassette master recording activity. [3] Petitioners contend, however, that they are not liable for the additions to tax for negligence under section 6653(a)(1) and (2), or the addition for substantial understatement of income tax under section 6661. *511 Section 6653(a)(1) and (2): Negligence
If any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations, section 6653(a)(1) imposes an addition to tax in an amount equal to 5 percent of the entire underpayment. In addition, section 6653(a)(2) imposes an addition to tax in the amount of 50 percent of the interest, determined under section 6601, due on the portion of the underpayment resulting from negligence or intentional disregard of rules or regulations. "Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)). Petitioners contend that they were not negligent because they had an honest misunderstanding of law and fact. They allege that Graham & Associates fraudulently misrepresented to them that Stable Gate would be investing in real estate as described in Stable Gate's offering memorandum and that, if the partnership had made such investment, losses from the real estate rental *512 activity would have been allowed. Petitioners liken themselves to the taxpayers in Chellappan v. Commissioner, T.C. Memo. 1988-208, who were the victims of a fraudulent scheme in which investors were sold nonexistent copying machines. Although petitioners' argument may seem appealing, the facts in this case simply do not support petitioners' allegations. During their first meeting with representatives from Graham & Associates, petitioners were given literature that included Stable Gate's offering memorandum. The offering memorandum indicated that the partnership intended to raise a minimum of $ 145,875 and a maximum of $ 340,375 through the offering. The offering memorandum disclosed that the business of the partnership was "to acquire, manage and hold for investment a decorated and furnished condominium at Lot 675 Stable Gate, Model B Moss Plantation, Hilton Head Island, S.C., and other real estate and/or equipment for lease". (Emphasis added.) The offering memorandum specified that the purchase price of the condominium was $ 142,500 plus closing costs of $ 5,225. The partnership was to make a downpayment of $ 14,250 and finance the balance *513 of the purchase price with a first mortgage. The offering memorandum indicated that the partnership would establish a debt service reserve with $ 56,000 of the proceeds from the offering, and that the partnership would use $ 154,000 of the proceeds to purchase other real estate investments or equipment to lease, including computers, cassette tapes, ice cream machines, office equipment, or factory machinery. In addition to disclosing risks associated with the real estate investment, the offering memorandum disclosed risks associated with leased equipment. The leased equipment risks included the fact that, because the equipment and lessees had not been determined as of that time, the investors would be relying solely on the judgment and ability of the general partner with respect to the purchase and financing of equipment, the selection of lessees, the negotiation of lease terms, and other aspects of the partnership's business and affairs. The offering memorandum warned that there could be no assurance that the partnership would be able to achieve income at any projected level, that the equipment could be leased at a profit, or that the residual value of the equipment, when combined *514 with the cash flow received from the lease, would equal or exceed the partnership's investment in and expenses associated with the equipment. The offering memorandum further warned that all or a portion of the tax benefits that an investor received could be lost, and an investor could incur severe adverse tax liability in the event the Internal Revenue Service disallowed any deductions taken by the partnership. Petitioners each reviewed the offering memorandum prior to investing in Stable Gate. Thus, they were fully advised that the partnership intended to spend a large portion of the proceeds raised by the offering on projects other than the condominium located on Hilton Head Island, South Carolina, and that such projects might include the leasing of cassettes. Furthermore, in 1984, petitioners also invested in the Graham & Associates' Children's Classics tax shelter and the Graham & Associates' Weymouth Ice Cream tax shelter. Children's Classics is similar to, if not the same as, the master recording tax shelter that Stable Gate purchased. Petitioners testified that they were interested in the Graham & Associates' investments as a supplement to Mr. Senyak's retirement program. *515 After reviewing the offering memorandum, they discussed the potential for profit with representatives of Graham & Associates. They claim that they purchased the unit in Stable Gate because the discussion revealed that the investment would be good in the short term, since there was a cash flow of $ 1,000 per month on their investment, and in the long term, since there was a strong likelihood, based on the recreational facilities and location, that it would significantly appreciate in value. We did not find petitioners' testimony reasonable or credible. We do not think petitioners actually or honestly had expectations of profit. Nor do we think any such expectation would have been reasonable. The offering memorandum indicated that the partnership intended to raise proceeds of between $ 145,875 and $ 340,375. Thus, the partnership intended to sell between 15 and 35 units. Although the offering memorandum specified that the tenant was to pay rent in the amount of $ 1,000 per month, plus all utilities, it is not believable that petitioners could have thought that the $ 1,000 would flow through solely to them and not to the other 14 to 34 investors. [4] Furthermore, the offering *516 memorandum indicated that $ 128,250 of the purchase price was to be financed with a first mortgage at current rates. It is unlikely that the $ 1,000 per month rent would be sufficient to cover the mortgage payment. Reflective of that fact, the offering memorandum specified that $ 56,000 of the offering proceeds would be used to fund a debt service reserve. We do not think that petitioners actually and honestly believed that they were to receive a cash return of $ 1,000 per month on their $ 9,725 investment in Stable Gate. Any such belief would be wholly unreasonable. Similarly, we think profit attributable to any long-term appreciation is highly speculative. The offering memorandum disclosed that the only contribution to the capital of the partnership that the general partner (Thomas Graham) *517 was required to make was his right to purchase the "Stable Gate real estate". The general partner, however, was entitled to receive 15 percent of the net proceeds from any sale or refinancing of partnership assets. Moreover, the offering memorandum disclosed that the general partner was to receive $ 10,900 of the proceeds from the offering for providing all legal, accounting, and investment expertise and developing all brochures, contracts, and the memorandum. The offering memorandum also indicated that $ 5,225 of the proceeds from the offering were for the closing costs associated with the purchase of the condominium unit. Considering these amounts in addition to expenses the partnership would incur on the sale of the condominium, petitioners' expectation of substantial long-term profit was speculative at best. Petitioners next argue that they were not negligent because they were unsophisticated, inexperienced taxpayers who relied on the advice of their financial consultant, an employee of Graham & Associates. Citing Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408, petitioners contend *518 that due care does not require moderate-income investors to independently investigate their investment or review every word in a prospectus, if they rely on the expertise of their financial advisers and accountants. Under certain circumstances, a taxpayer's reliance on the advice of a competent adviser can be a defense to the additions to tax for negligence. Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991). Such reliance, however, must be reasonable and in good faith. Ewing v. Commissioner, supra; Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974). In Klieger v. Commissioner, T.C. Memo. 1992-734, this Court held that reliance upon the advice of the promoter of the tax shelter by taxpayers who had invested in other tax shelters promoted by Graham & Associates was not reasonable. Similarly, in this case, petitioners' reliance on the opinions of Graham & Associates' employees was not reasonable or in good faith. Thomas Graham is clearly identified in the offering *519 memorandum as the president of Graham & Associates and as Stable Gate's general partner. The offering memorandum claimed that Thomas Graham had substantial experience in the development, construction, and management of real estate and equipment leasing, that prior to forming Graham & Associates, he was controller of the real estate construction division of Forest City Enterprises, that he holds a bachelor's degree (1972) in accounting and an M.B.A. (1978) in Management Information Systems, and that he served as a general partner in numerous real estate partnerships. The offering memorandum further disclosed that Thomas Graham was the president of Real Estate Technology Corp., Stable Gate's only other general partner. Petitioners knew that Thomas Graham was the general partner and claim that it was his expertise that they relied upon. The offering memorandum, however, also clearly disclosed Thomas Graham's financial interest in Stable Gate, including his right to $ 10,900 of the proceeds raised by the offering, 15 percent of the profit on any sale of the partnership's assets, and between 1 and 10 percent of the cash flow. Under these circumstances, petitioners' reliance on Thomas *520 Graham or employees of Graham & Associates was not reasonable or in good faith. We have considered Heasley v. Commissioner, supra, cited by petitioners. The Heasley case is readily distinguishable from the instant case. In Heasley v. Commissioner, supra at 381, the taxpayers sought the advice of an accountant who independently "reviewed the * * * prospectus and the accompanying tax and legal opinions and found everything in order". Because the taxpayers in Heasley previously had not employed an accountant, they hired an accountant who had been referred to them by the promoter of the tax shelter. Id. There is no indication, however, that the accountant was an employee of the promoter or otherwise had any financial interest in the tax shelter. Id. In this case, although Mr. Senyak had always had professionals prepare his returns, petitioners did not have a C.P.A. or any other professional independently review the Stable Gate investment, but relied solely on the advice of Thomas Graham and other employees of Graham & Associates, the promoter of the shelter. Unlike the taxpayers in Heasley *521 , petitioners reviewed the entire offering memorandum, including the legal opinion, risks, and admonitions that a prospective investor should consult with his tax adviser as to the Federal, State, and local tax consequences of an investment in the partnership. Moreover, petitioners made no effort to monitor their investment and have failed to establish that they intended to profit from their investment in Stable Gate. Based upon the record presented, we conclude that petitioners' reliance upon the alleged expertise of Thomas Graham and the opinion of employees of Graham & Associates was not reasonable or prudent. Pasternak v. Commissioner, 990 F.2d 893, 902-903 (6th Cir. 1993) (reliance on promoter of tax shelter not a defense to negligence addition), affg. T.C. Memo. 1991-181; Klieger v. Commissioner, T.C. Memo. 1992-734. Respondent is therefore sustained with respect to the negligence additions to tax under section 6653(a)(1) and (2). Section 6661: Substantial Understatement
Section 6661(a) provides for an addition to tax in the amount of 25 percent of any underpayment of tax attributable *522 to a substantial understatement of income tax. An understatement is substantial if it exceeds the greater of 10 percent of the correct tax or $ 5,000. Sec. 6661(b)(1)(A)(i) and (ii) and (ii). Petitioners do not dispute that they substantially understated their tax liability on their 1984 return. [5] *523 Generally, if a taxpayer has substantial authority for his tax treatment of the item in question, or if the taxpayer adequately discloses the tax treatment of the item on his return, then the taxpayer may escape liability for the addition to tax with respect to that item. Sec. 6661(b)(2)(B). If the item in question, however, is attributable to a tax shelter, [6] the disclosure exception will not apply, and the substantial authority exception will apply only if there was substantial authority for the treatment of the item on the return and the taxpayer reasonably believed that his treatment of the item was more likely than not the proper tax treatment. Sec. 6661(b)(2)(C)(i); sec. 1.6661-5, Income Tax Regs.
Petitioners offer no authority for their claimed deductions from Stable Gate's master recording cassette activities. Furthermore, they did not provide any evidence that the activity related to the Hilton Head Island condominium would have produced deductions to them of $ 13,227 that would have been supported by substantial authority. On their 1984 return, petitioners did not disclose the tax treatment of the deductions passed through from Stable Gate. In fact, there is no reference on their return to real estate activities, to master recording cassette activities, or even to Stable Gate. Mr. Senyak, an FAA employee receiving $ 58,814 in W-2 wage income, and Mrs. Senyak, receiving about $ 2,000 in W-2 wage income, claimed ordinary business losses of $ 40,572, reducing their total tax liability for 1984 to $ 1,113, and claiming a refund of virtually all of the taxes withheld from *524 their wage income for the year. Respondent increased their taxable income from the $ 12,083 reported on their return to $ 53,146, and petitioners have agreed to that adjustment. Petitioners attempted to mask their tax shelter deductions by reporting the losses from their three tax shelters as a $ 40,572 Schedule C loss from another entity, Diron Investment Co. [7]
If a taxpayer shows that there was reasonable cause for the understatement *525 and that the taxpayer acted in good faith, respondent may waive all or part of the addition to tax. Sec. 6661(c). Waiver of the substantial understatement addition to tax is subject to review only for abuse of discretion. Heasley v. Commissioner, 902 F.2d at 384-385; Mailman v. Commissioner, 91 T.C. 1079, 1082-1084 (1988). We have previously concluded that petitioners' reliance on Thomas Graham's purported expertise and the opinions of employees of Graham & Associates was neither reasonable nor in good faith. Based on our consideration of the record as a whole in this case, we conclude that there was no reasonable cause for the substantial understatement of tax. Accordingly, we conclude that respondent did not abuse her discretion by failing to waive the section 6661(a) addition to tax. Consequently, we hold that petitioners are liable for the section 6661(a) addition to tax for substantially understating their tax liability. Decision will be entered for respondent. Footnotes
1. While the statutory notice of deficiency referred to sec. 6653(a)(1)(A) and (B), the proper designation for the taxable year 1984 is sec. 6653(a)(1) and (2). The parties and the Court have used the correct subsection numbers for the taxable year involved in this case.↩
2. The Court has disregarded Mr. Senyak's testimony that a coworker contacted the Internal Revenue Service (IRS), and that IRS reported nothing negative about Graham & Associates. This testimony was hearsay. The Court will not assume that IRS personnel violated the law against unauthorized disclosure of another taxpayer's return information. Sec. 7213.↩
3. The partnership case was disposed of by a decision entered by this Court on November 17, 1990, which disallowed the deductions totaling $ 440,902. Stablegate Limited 675-B, Real Estate Technology, Inc., Tax Matters Partner v. Commissioner↩, docket No. 16189-88.
4. While there were numerous investment units↩ in the Stable Gate partnership, there was but a single condominium unit, consisting of "a living room, kitchen, dining room, master bedroom, second bedroom, and two baths".
5. Petitioners reported a total tax liability of $ 1,113 on their 1984 return. Their correct tax was $ 12,563. Therefore, they understated their liability by $ 11,450, which is greater than $ 5,000 and greater than 10 percent of the tax due.↩
6. In Illes v. Commissioner, T.C. Memo. 1991-449, affd. 982 F.2d 163↩ (6th Cir. 1992), this Court held that Children's Classics Audio Cassettes was a tax shelter.
7. On that Schedule C, petitioners claimed ordinary losses and business expenses such as $ 10,000 for leasing expense, $ 7,500 for advertising, and $ 1,225 for legal and professional services. While the Stable Gate shelter adjustment increased petitioners' taxable income by only $ 13,227, petitioners' 1984 taxable income was increased from the $ 12,083 reported on their return to $ 53,146. A review of petitioners' tax return and the deficiency notice for 1984 indicates that the entire Schedule C loss of $ 40,572 was disallowed by the adjustments previously agreed to by petitioners.↩